1  Michael S. Kogan (SBN 128500)
   Peter F. Jazayeri (SBN 199626)
2  **ERVIN COHEN & JESSUP LLP**
   9401 Wilshire Boulevard, Ninth Floor
3  Beverly Hills, California 90212-2974
   Telephone (310) 273-6333
4  Facsimile (310) 859-2325
   mkogan@ecjlaw.com
5

6  Attorneys for Debtor

7

8

9             UNITED STATES BANKRUPTCY COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11                  LOS ANGELES DIVISION

12

13 | In re                                  ) Case No. 2:09-bk-23944-VZ
                                            )
14 | CENTERSTONE DIAMONDS, INC.,            ) Adv No.
                                            )
15 |         Debtor.                        ) Chapter 11
   | *Jointly Administered with*            ) (Jointly Administered With 2:09-bk-23945-VZ)
16 |                                        )
   | In re MICHAEL BEAUDRY, INC.,           ) **COMPLAINT AND OBJECTION TO**
17 |                                        ) **CLAIM FILED OF FCC, LLC**
   |         Debtor.                        )
18 |                                        )
   |                                        )
19 | ☐ *Applies only to Centerstone Diamonds, Inc.* ) Date:  [No Hearing Set]
   | ☐ *Applies only to Michael Beaudry, Inc.*      ) Time:
20 | _____    ) Place: Courtroom 1368
                                            )        255 E. Temple Street
21 | CENTERSTONE DIAMONDS, INC. and         )        Los Angeles, CA 90012
   | MICHAEL BEAUDRY, INC.,                 )
22 |                                        )
   |         Plaintiffs,                    )
23 |                                        )
   |     v.                                 )
24 |                                        )
   | FCC, LLC, a Florida limited liability company )
25 | dba FIRST CAPITAL WESTERN REGION,      )
   | LLC,                                   )
26 |                                        )
   |         Defendant.                     )
27 | _____    )

28

IDOCS:12999.3:1015539.1/

COMPLAINT AND OBJECTION TO CLAIM FILED BY FCC, LLC

Plaintiffs, Centerstone Diamonds, Inc. ("CDI"), and Michael Beaudry, Inc. ("MBI") (collectively, "Plaintiffs", "Beaudry" or the "Debtor"), the debtors and debtors in possession herein in these jointly administered bankruptcy cases herein, hereby allege the following against defendant FCC, LLC, a Florida limited liability company dba First Capital Western Region, LLC ("FCC" or "Defendant") as follows:

### JURISDICTION

1. The United States Bankruptcy Court has jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. § 1334. This proceeding is brought pursuant to Bankruptcy Code Sections 502(b), 506(a), and 510(c), and Federal Rules of Bankruptcy Procedure Rules 3007(b), 7001(2), 7001(8), 7001(9), and 9014(c), among others. This is a core proceeding under 28 U.S.C. §157(b)(2), and Plaintiffs consent to this Court's entry of final Orders relating to all matters herein.

2. Debtor includes in this Adversary Proceeding a request for affirmative relief as specified in Bankruptcy Rule 7001, and seeks the application of the Adversary Rules to this proceeding, including those otherwise deemed inapplicable pursuant to Bankruptcy Rule 9014(c).

3. Among other things, Debtor seeks declaratory relief as to the amount, extent and priority of the claim asserted against Debtor by FCC, Debtor's lender, as well as permissible offset for damages sustained by Debtor. Debtor also seeks a determination that all or a portion of the claim asserted by FCC should be subordinated to the claims of other unsecured creditors and interest holders, pursuant to Bankruptcy Code Section 510(c) and principles of equitable subordination, as well as other appropriate relief, as more fully set forth below.

### PARTIES

4. The Plaintiffs herein are Centerstone Diamonds, Inc. ("CDI"), and Michael Beaudry, Inc. ("MBI"), the debtors and debtors in possession herein in these jointly administered bankruptcy cases. The within bankruptcy cases are jointly administered under Bankruptcy Case No. 2:09-bk-23944-VZ, which cases are currently pending in the Los Angeles Division of the United States Bankruptcy Court for the Central District of California.

5.    Debtor is informed and believes that FCC is a limited liability company organized under the laws of the State of Florida, with its principal place of business in Florida, doing business in California, with such business activities in the Central District of California at all times material herein have been substantial, continuous and systematic.

## GENERAL ALLEGATIONS

6.    FCC and the Debtor are parties to that certain Factoring and Inventory and Advances and Security Agreement dated as of May 2, 2007 ("Factoring Agreement") and various other documents related to the Factoring Agreement (collectively "Factoring Facility"). The factoring Agreement was amended on September 14, 2007, and again on April 10, 2008. Under the Factoring Facility, FCC advances money for Beaudry's use in the operation of its business (the "Business"), repayment of which is secured by a first lien and security interest in substantially all of the assets owned by Beaudry ("FCC Lien"), including without limitation, all: (a) cash and cash equivalents ("Cash"); (b) accounts receivable ("AR"); (c) inventories of finished goods, works in progress and raw materials for the design and production of finished goods (collectively "Inventory"); and (d) equipment used in the design and fabrication of jewelry and other personal property used in the operation of the Business ("Personal Property").

7.    Michael Beaudry ("M. Beaudry") personally guarantied repayment of the Debt under the Factoring Facility pursuant to a Continuing Guaranty dated May 2, 2007 executed by M. Beaudry in favor of FCC ("M. Beaudry Guaranty"). The M. Beaudry Guaranty is secured by a Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing dated May 3, 2007 executed by M. Beaudry, as Trustor, for the benefit of FCC, as beneficiary, recorded in the Official Records of El Dorado County, California ("El Dorado County Records") on May 22, 2007 as Document No. 2007-0034235-00 ("Camino Trust Deed") on real property owned by M. Beaudry and located at 3600 Fuji Court, Camino, California ("Camino Property").

8.    M. Beaudry also provided a further guaranty for repayment of a portion of the Debt, in the amount of One Million Five Hundred Thousand Dollars ($1,500,000), through that certain Continuing Guaranty dated May 3, 2007 executed by MGB, which is controlled by M. Beaudry, in favor of FCC ("MGB Guaranty" and with the M. Beaudry Guaranty "Guaranties").

ERVIN COHEN & JESSUP LLP

The MGB Guaranty is secured by a Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing ("8th Street Trust Deed") dated May 3, 2007 executed by MGB, as Trustor, for the benefit of FCC, as beneficiary, and recorded in the Official Records of Los Angeles County, California ("Los Angeles County Records") on May 22, 2007 as Document No. 20071238539, which grants a lien on property owned by MGB located at 323 West 8th Street, Los Angeles, California ("8th Street Property").

9. On or about May 26, 2009, FCC filed an action against, among others, MBI, CDI, MGB, M. Beaudry and Laura Beaudry ("L. Beaudry"), in the Superior Court of the State of California, County of Los Angeles, Case No. BC 413687 ("FCC Action") alleging the following causes of action: (1) Breach of Factoring Agreement against MBI and CDI; (2) Breach of Continuing Guaranties against M. Beaudry and MGB; (3) Judicial Foreclosure on Real Property and Deficiency Judgment against, among other defendants, MBI, CDI, M. Beaudry and MGB; (4) Recovery of Specific Personal Property against MBI and CDI; (5) Injunctive Relief against MBI and CDI; and (6) two causes of Action of Avoidance of Fraudulent Transfer against L. Beaudry.

10. Debtor has invested significant time and money in the Business in a manner that would facilitate sales of its Inventory such that Debtor could repay to FCC its loan and then have additional capital necessary to operate in a profitable manner. Towards that end, Debtor created products to be marketed through a variety of channels ("Sales Channels"), including upscale department stores, jewelry stores, a sales team and internet auction sites, with many products placed in sales outlets on consignment. However, as more fully described below, FCC's improper demands and excessive charges, exacerbated by its own deterioration of its financial rating, injured Debtor in its Business, and has caused significant losses due to FCC's actions.

11. Prior to the Petition Date, FCC, to its benefit and to the detriment of Debtor, engaged in a pattern and practice of (a) delaying approvals of funding on documentation submitted to it by Debtor, (b) delaying the payment of funds for the Debtor's operation when such funds were due and payable, (c) making unreasonable demands of Debtor unwarranted by and in violation of the Factoring Agreement as preconditions to its own compliance with the Factoring Agreement, (d) charging excessive fees to the Debtor, and (e) engaging in further delay tactics

ERVIN COHEN & JESSUP LLP

1 | which made it difficult for Debtor to successfully and timely operate its Business.

2 |     12.    Debtor is informed and believes that FCC breached its contractual obligations and breached its implied duty of good faith and fair dealing arising from the Factoring Agreement as stated above and in the following respects, among others:

    a.    FCC failed to timely provide funding to Debtor;

    b.    FCC unreasonably failed and refused to timely approve advances submitted to it for approval;

    c.    FCC jeopardized the success of the entire Business by overcharging the Debtor approximately $811,542 from May-December 2007, $1,037,689 in fiscal 2008, and $783,394 in 2009 to the Petition Date for a total of $2,632,625 for interest and fees under the Factoring Agreement prior to the filing of the Bankruptcy Case;

    d.    FCC unreasonably contacted clients of the Business, making it difficult for the Debtor to successfully and timely operate its Business;

    e.    Despite the delays it had caused, FCC unreasonably failed and refused to advance funds to Debtor to allow Debtor to operate.

    13.    FCC's actions have injured other creditors of the Debtor and conferred an unfair advantage on FCC. FCC could not have believed that the Debtor could have serviced its debt with the exorbitant fees charged by FCC. By making the advances to the Debtor, despite obvious warning signs, the only plausible explanation for FCC's actions is that it was simply driven by the exorbitant fees it was extracting from the Debtor under the factoring Agreement.

    14.    As a result of FCC's breaches of its contractual obligations and its implied duty of good faith and fair dealing arising from the Factoring Agreement, (a) the Debtor has been unable to timely offer its products for sale and, when they were offered for sale, was forced to sell them for lower prices than they would have sold for absent FCC's misconduct; (b) Debtor was unable to pay down the loan as projected; and (c) Debtor was forced into bankruptcy in order to protect itself from further losses.

    15.    Also as a result of FCC's breaches of its contractual obligations and breaches of its implied duty of good faith and fair dealing arising from the Factoring Agreement, Debtor has

ERVIN COHEN & JESSUP LLP

1 incurred considerable additional fees and expenses, including but not limited to (a) additional
2 payments to FCC's attorneys to review the documents, (b) increased costs and fees paid to FCC;
3 (c) increased interest under the Factoring Agreement; and (d) increased fees and costs in
4 connection with this bankruptcy.

5     16.    Also as a result of FCC's breaches of its contractual obligations and breaches of its
6 implied duty of good faith and fair dealing arising from the Factoring Agreement, Debtor has been
7 damaged in an amount to be determined, but believed to be at least in the range of approximately
8 $2,632,625.

9     17.    On July 6, 2009, the Debtor filed its Schedules of Assets and Liabilities (the
10 "Schedules") with the Bankruptcy Court. The Schedules listed the claim of FCC on Schedule "D",
11 as a secured claim in the amount of $6,581,856 (the "FCC Claim"). The FCC Claim was listed as
12 contingent, unliquidated and disputed on the Schedules.

13     18.    On July 24, 2009, the Debtor sent its Notice of Claims Bar Date, which set the last
14 day to file claims against the Debtor as October 30, 2009. FCC received notice of the Claims Bar
15 Date, and **DID NOT FILE** a proof of claim. In addition, as of March 1, 2010, FCC has been paid
16 postpetition $210,000 by the Debtor, which amount may increase during the pendency of the
17 Bankruptcy Case (the "Postpetition FCC Payments").

18 <center>**OBJECTION TO FCC'S CLAIM**</center>

19     19.    By this reference, Debtor hereby incorporates the allegations set forth above in
20 paragraphs 1-18, inclusive.

21     20.    Debtor objects to the FCC Claim on the grounds that FCC's rights under the
22 Factoring Agreement are subject to any defenses by Debtor to enforcement arising under state or
23 federal law. As provided by Local Rule 3007-1(b), the date, time and place of hearing on this
24 Objection will be set by the Court. Moreover, FCC did not file a claim by the bar date, and the
25 Schedules indicated the FCC Claim as contingent, unliquidated and disputed, and therefore FCC
26 does not have a claim against the bankruptcy estate.

27     21.    By virtue of the damages caused to Debtor by FCC's breaches of its contractual
28 obligations and breaches of its implied duty of good faith and fair dealing arising from the

Factoring Agreement, as described above, FCC's Claim fails to the extent of such damages and such defenses, and as set forth and to be proven at trial should be disallowed.

### FIRST CLAIM FOR RELIEF

### (Declaratory Relief as to the Amount of the FCC Claim)

22. By this reference Debtor hereby incorporates the allegations set forth above in paragraphs 1-21, inclusive, as though set forth in full herein.

23. By reason of the foregoing, Debtor contends that it has sustained damages in an amount to be determined, but believed to be at least in the range of approximately $2,632,625, plus all payments made by the Debtor during the pendency of the Bankruptcy Case should reduce the principal balance of FCC's Claim, which were proximately caused by the actions of FCC, and which should be applied as an offset to the amounts claimed due by FCC, thereby reducing the allowable claim of FCC accordingly. FCC denies this contention. Accordingly, a dispute now exists as to the amount of FCC's entitlement pursuant to the FCC Claim. Debtor therefore seeks a declaration of the Court setting out the parties' respective rights with respect to such FCC Claim, including the extent, validity and amount of the FCC Claim, and security claimed under the FCC Claim, and any reductions to the FCC Claim including the application of principal reduction for the Postpetition FCC Payments.

### SECOND CLAIM FOR RELIEF

### (Offset Against FCC Claim Amount for Damages Sustained by Debtor)

24. By this reference Debtor hereby incorporates the allegations set forth above in paragraphs 1-23, inclusive, as though set forth in full herein.

25. By reason of the foregoing, Debtor has sustained damages in an amount to be determined, but believed to be at least in the range of approximately $2,632,625, which were proximately caused by the actions of FCC, and which should be applied as an offset to the amounts claimed due by FCC, thereby reducing the allowable claim of FCC accordingly.

## THIRD CLAIM FOR RELIEF

### (Equitable Subordination under 11 U.S.C. § 510(c))

26. By this reference, Debtor hereby incorporates the allegations set forth above in paragraphs 1- 25, inclusive.

27. There exist a significant number of vendors to the Business who are creditors of Debtor ("Creditors").

28. By virtue of the discretion granted to it pursuant to the Factoring Agreement, FCC had the ability to exercise power and control over Debtor's affairs with respect to the Business and over the ultimate success of the Business.

29. Debtor performed all of its obligations pursuant to the Factoring Agreement, except for those obligations that were excused by FCC's conduct.

30. As a direct and proximate result of the breaches, failures and inequitable conduct referenced above, Debtor has suffered damages believed to be at least in the range of approximately $2,632,625, but which have not yet been fully ascertained.

31. As a direct and proximate result of FCC's breaches of contract and failures referenced above, Creditors have been injured in that Debtor became unable to pay them the amounts owed by the Business.

32. Pursuant to Bankruptcy Code Section 510(c), 11 U.S.C. § 510(c), this Court may, under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or interest.

33. The FCC Claim should be equitably subordinated in priority to the claims of creditors holding allowed secured and unsecured claims against the Debtor's estate.

## FOURTH CLAIM FOR RELIEF

### (For Preliminary Injunction and Injunction Against Actions by the Defendant -- 11 U.S.C. § 105(a))

34. By this reference, Debtor hereby incorporates the allegations set forth above in paragraphs 1- 33, inclusive.

35. Both M. Beaudry and L. Beaudry are essential to the present and forthcoming

period of the Debtor's operations and are instrumental to the Debtor's goals to reorganize itself into a profitable, ongoing business concern. FCC's actions will improperly force them to choose between protecting the Debtor's interests or protecting their own.

36. As FCC's Action was filed in the State Court, M. Beaudry and L. Beaudry have been and will continue to be forced to interrupt their duties, responsibilities and activities with respect to overseeing the Debtor's continued operations and will be forced to defend themselves in the state court forum. Consequently, they will be unable to fully direct their attentions to the Debtor during any restructuring process.

37. FCC's acts against the Debtor will directly affect the value of its assets and its the ability to continue in its attempts to reorganize its operations. Because such acts will directly and adversely affect the viability of the Debtor's reorganization efforts, they will thereby frustrate the purposes and protections of Chapter 11 of Title 11 of the United States Code.

38. No other parties would be injured as a result of enjoining FCC's actions against the principal of the Debtor and his wife. Indeed, by enjoining the action of FCC the Court will best serve the interests of the Debtor and those of other creditors who have properly filed proof of claims with the Bankruptcy Court of the Central District of California. FCC will not be harmed in that its interest in the Personal Property is adequately protected by the value of the Personal Property.

39. The Debtor has no adequate remedy at law because the Debtor's operations are currently at a stage whose outcome will determine whether the Debtor will be able to reorganize as an ongoing business or will be forced to liquidate. Unless those who control the operations of the Debtor are able to bring their full attention to those operations, the Debtor's chances to continue as an ongoing business concern will be drastically diminished.

40. Consequently, the Debtor requests that FCC and their agents be enjoined from further pursuing the FCC Action in the state court until after the plan of reorganization (the "Plan") has been confirmed and only to the extent that FCC's interest is not satisfied by the Plan.

WHEREFORE, as to the Objection to FCC's Claim, Debtor prays for an Order sustaining Debtor's objection to the extent provided herein, and for attorney's fees and costs;

WHEREFORE, as to the First, Second and Third Claims for Relief, Debtor prays:

1. For declaratory relief as to the allowable amount of the FCC Claim, and specifically, adjudicating that FCC's Claim shall be fixed and determined in the sum of the FCC Claim minus the damages to Debtor, and that all other amounts should be denied;

2. For an Order setting off from FCC's claim the amount of damages sustained by the Debtor;

3. For an Order equitably subordinating the claim of FCC to the allowed claims of all other Creditors of the Debtor in this Bankruptcy Case;

4. For a preliminary injunction, enjoining FCC, its agents, servants, employees, and all persons acting under, in concert with or for them, from pursuing the current action in the state court against M. Beaudry and L. Beaudry. The Debtor also requests that the Court prohibit the above-named parties from pursuing any action other than one in accordance with the Bankruptcy Code and the local rules of the Bankruptcy Court of the Central District of California, for their claims as set forth in the FCC Action;

5. For attorney's fees and costs of suit; and

6. For such other and further relief as the Court may deem proper.

DATED: March ___, 2010                ERVIN COHEN & JESSUP LLP
                                      Michael S. Kogan
                                      Peter F. Jazayeri


                                      By: /s/Michael S. Kogan
                                          MICHAEL S. KOGAN
                                          Attorneys for Debtor